**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES S. MATTHEWS, JR. )<br>)<br>)<br>Plaintiff/Appellant, )<br>v. )<br>)<br>JORGE GAMBOA, )<br>)<br>Defendant/Appellee. ) | Case No. CIV-20-566-D<br>(Bankruptcy No. 11-16261-JDL) |

## **ORDER**

Plaintiff/Appellant James S. Matthews, an attorney representing himself, initiated an adversary proceeding in Defendant/Appellee Jorge Gamboa's Chapter 13 bankruptcy case. In the adversary proceeding, Mr. Matthews asserted that Mr. Gamboa owed him a debt for unpaid legal services that was nondischargeable pursuant to 11 U.S.C. § 523(a)(3). Following a trial, the bankruptcy court entered judgment in favor of Mr. Gamboa. This appeal followed.[1]

### **RELEVANT BACKGROUND**

In late 2009, Mr. Gamboa engaged Mr. Matthews to represent him in connection with an administrative proceeding. Trial Tr. 15-16, 88. Mr. Matthews did not formalize their agreement in writing, but Mr. Gamboa paid Mr. Matthews $5,000 shortly after their initial meeting. *Id.* at 16, 88, 123. Throughout the representation, the only billing statement Mr. Gamboa received from Mr. Matthews was purportedly sent on March 26, 2010. *Id.* at

---

[1] Appellant initiated two other bankruptcy appeals from the same adversary proceeding. *See* Case No. Civ-20-566-D and Case No. CIV-20-945-D.

16, 120. The statement reflected a credit of $525 to Mr. Gamboa.[2] *Id.* at 16, 120. In letters dated May 4, 2010 and May 8, 2010, Mr. Matthews advised Mr. Gamboa that he would withdraw from representation unless additional money or collateral was provided. *Id.* at 102-107. Mr. Gamboa then turned over a motorcycle and a copy of the motorcycle title to Mr. Matthews. *Id.* at 105-107, 123. Mr. Matthews' representation of Mr. Gamboa ended in early 2011. *Id.* at 88.

On November 17, 2011, Mr. Gamboa initiated a voluntary Chapter 13 bankruptcy petition. He did not list Mr. Matthews as a creditor on his schedules and the deadline to file a proof of claim or object to the discharge passed with no action from Mr. Matthews. *See* Stipulations in Final Pretrial Order [Doc. 2-111] at 3. The order confirming the Chapter 13 plan was entered on June 22, 2012. *Id.*

On July 9, 2013, over two years after his representation ended, Mr. Matthews purportedly sent Mr. Gamboa a billing statement showing a balance owed of $22,675.00. Trial Tr. at 121. Then, on August 14, 2013, Mr. Matthews sued Mr. Gamboa in state court seeking to collect on the unpaid debt and foreclose on the motorcycle. Final Pretrial Order at 3. Mr. Gamboa failed to answer in the state court proceeding and a judgment was entered against him on January 17, 2014. *Id.* Following the issuance of a contempt citation for

---

[2] Throughout the litigation, Mr. Matthews represented that this billing statement was for services provided to Mr. Gamboa. However, he admitted for the first time at trial that although Mr. Gamboa's name appears in the address box, the statement actually detailed work that was done for another client. At trial, Mr. Matthews also admitted that certain facts he included in the state court petition seeking to collect on Mr. Gamboa's alleged debt were incorrect, including his hourly rate, the total amount owed, and the invoices he included as exhibits. Trial Tr. at 101-102.

failure to appear at a hearing on assets in the state court case, Mr. Gamboa's bankruptcy attorney left Mr. Matthews a voicemail explaining that Mr. Gamboa had filed for bankruptcy. Trial Tr. at 16-17. There is no dispute that Mr. Matthews was not aware of the bankruptcy case until he received the voicemail. *Id.*

On January 30, 2017, Mr. Matthews initiated an adversary proceeding in Mr. Gamboa's bankruptcy case seeking a denial of discharge as to the amount owed to Mr. Matthews. Mr. Gamboa did not amend his schedules to add Mr. Matthews as a creditor and the bankruptcy plan was completed on May 10, 2017 with no payments being made to unsecured creditors. Final Pretrial Order at 3.

In the adversary proceeding, the parties filed cross-motions for summary judgment as to whether the debt owed to Mr. Matthews was excepted from the discharge. In its Memorandum Opinion and Order Denying Cross Motions for Summary Judgment [Doc. No. 2-102], the bankruptcy court disposed of certain legal issues but denied summary judgment because there was "a disputed issue of material fact as to whether Gamboa had knowledge that Matthews had a claim prior to the filing of the bankruptcy or the deadline for filing a proof of claim." *Id.* at 19. The bankruptcy court then set the adversary proceeding for a trial on the merits of this one remaining issue. *Id.*

Pursuant to the bankruptcy court's Amended Scheduling Order [Doc. No. 2-103], the parties submitted a proposed pretrial order that included a statement of the legal issues to be tried. In the Final Pretrial Order entered in the case, the bankruptcy court struck the parties' proposed statement of the legal issues and replaced it with a statement taken nearly verbatim from the order denying the parties' cross-motions for summary judgment. Final

Pretrial Order at 4. The trial was held on June 3, 2020 and judgment was entered in favor of Mr. Gamboa. Trial Tr. at 130; Judgment [Doc. No. 2-117].

## STANDARD OF REVIEW

The legal conclusions or determinations of a bankruptcy court are subject to de novo review on appeal to a federal district court. *In re Herd*, 840 F.2d 757 (10th Cir. 1988). Factual findings are reviewed for clear error, and will be adopted unless clear error is found. *Id.* A factual finding is clearly erroneous if "it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made." *LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir.1987)

## DISCUSSION

11 U.S.C. § 523 is at the heart of this appeal. In relevant part, this statute provides that a Chapter 13 discharge does not discharge an individual debtor from any debt

> neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> > (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
> >
> > (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;
>
> * * *

*Id.* at § 523(a)(3). Put more simply, for a debt to be excepted from discharge under § 523(a)(3), "the record must establish that a creditor known to the debtor was not listed." *In re Lottes*, 226 B.R. 634, 637 (Bankr. E.D. Mo. 1998); *see also In re Phillips,* 599 B.R. 133, 137 (Bankr. D. Kan. 2019) (finding that "§ 523(a)(3) does not apply…when the debtor has no knowledge of the claim in time to include it in the schedules before the bar date has run.").

Although Mr. Matthews' arguments are somewhat disjointed, his chief complaint appears to be that the bankruptcy court misapplied § 523(a)(3) when it concluded that the debt was discharged because it was not known to Mr. Gamboa prior to the bar date. Mr. Matthews argues that the bankruptcy court incorrectly required him to prove that the debt was "mature" when the proper standard to be applied under §523(a)(3) is "whether Gamboa knew or should have known Matthews may assert a claim." *See* Appellant's Br. 20.

The focus of § 523(a)(3), however, is not on whether the creditor may assert a claim, but on whether the debt or the creditor is "known to the debtor." *See In re Arch Wireless*, 332 B.R. 241, 255 (Bankr. D. Mass. 2005) ("…it is the debtor's knowledge of a creditor, not the creditor's knowledge of his claim, which controls whether the debtor has a duty to list that creditor."). Although not specifically discussing § 523(a)(3), the Supreme Court has described a "known creditor" as one who is "reasonably ascertainable by the debtor." *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490, (1988). Further, in applying §523(a)(3), courts have generally considered whether the debtor had knowledge of a "claim," which by definition includes matured and unmatured debts. 11 U.S.C. § 101(5); *In re Schlueter*, 391 B.R. 112, 116 (10th Cir. BAP (Colo.) 2008) ("Pursuant to § 523(a)(3),

5

a debtor has a responsibility to list claims only if known…"); *In re Phillips*, 599 B.R. at 135 ("…there is no question that Debtor did not have knowledge of [the] claim…"); *In re Snyder*, 544 B.R. 905, 908 (Bankr. M.D. Fla. 2016) ("§ 523(a)(3) does not apply because the Debtors were unaware of the [plaintiffs'] claim at the time this case was filed"); *In re Lottes*, 226 B.R. at 636 (applying "the expansive bankruptcy definition of a claim" when considering § 523(a)(3)); *In re Wilson*, 200 B.R. 72, 74 (Bankr. M.D. Fla. 1996) ("[Plaintiff] was not known by the Debtor as an entity which was or might assert a claim against it.").

Here, the bankruptcy court correctly focused on Mr. Gamboa's knowledge of a potential claim rather than Mr. Matthews' subjective belief that he was owed more money than what had already been paid. The bankruptcy court described its inquiry as "whether Mr. Gamboa had knowledge of Mr. Matthews' claim at the time the bankruptcy was filed." Trial Tr. at 129. The bankruptcy court then found that "there was no documentary evidence or any other credible evidence to show that Mr. Gamboa had any knowledge that he owed anything to Mr. Matthews" and that "Mr. Gamboa had a reasonable belief he did not owe Mr. Matthews any money." *Id.* The bankruptcy court thus took into consideration both Mr. Gamboa's actual knowledge of a possible claim as well as whether the debt was reasonably ascertainable. And, contrary to Mr. Matthews' assertion, the bankruptcy court did not improperly require him to show that the debt had matured, but simply rejected his argument that Mr. Gamboa had knowledge of a potential debt to Mr. Matthews.

Mr. Matthews also argues that the evidence does not support the judgment. Throughout his brief, he states that the only inference to be drawn from the evidence

presented at trial is that Mr. Gamboa knew he owed money to Mr. Matthews at the time of the bankruptcy filing. *See* Appellant's Br. 7, 11, 17, 22. This argument is without merit. Mr. Matthews' own trial testimony established that Mr. Gamboa paid him $5,000 following their initial meeting, that he had no written agreement with Mr. Gamboa, that after he demanded more money Mr. Gamboa turned over a motorcycle along with a certificate of title, that his billing records reflect no calls or requests for additional payment after the motorcycle was received, and that the only billing statement he sent to Mr. Gamboa prior to the bankruptcy filing showed a *credit* to Mr. Gamboa. All of this evidence suggests that the debt owed to Mr. Matthews, if any, was not known to Mr. Gamboa at the time he filed for bankruptcy. Mr. Matthews does not genuinely dispute this evidence but instead vaguely argues that any reasonable person would realize that more money would have been owed because he was charging by the hour and he never sent Mr. Gamboa a paid in full receipt. To the contrary, based on the evidence presented at trial, it was exceedingly reasonable for Mr. Gamboa to assume no money was owed given that he made a significant payment to Mr. Matthews and did not receive a billing statement showing a debt until well after the filing of the bankruptcy case. There is no error in Judge Loyd's factual findings, let alone clear error, and the bankruptcy court's judgment is plainly supported by the record.

Mr. Matthews also makes much of the fact that the bankruptcy court altered the parties' statement of the legal issues in the Final Pretrial Order[3] which, in his view,

---

[3] To the extent Mr. Matthews is seeking to appeal the Final Pretrial Order itself, this Court would lack jurisdiction because the order is not a final appealable order. *See* 28 U.S.C. § 158(a). However, the Court understands his argument to be that the trial infringed on his due process rights by focusing on a previously undefined issue.

impermissibly changed the issues for trial and "made it impossible for Plaintiff to prevail." Appellant's Br. 28-29. He admits, however, that the bankruptcy court's order denying the cross-motions for summary judgment "clearly defined the issue to be tried." *Id.* As the language in the court's summary judgment order and the Final Pretrial Order are nearly identical, his argument that the alteration to the Final Pretrial Order violated his right to notice, or somehow added a new issue for trial, is meritless.[4] Further, Mr. Matthews' suggestion that the bankruptcy court manipulated the pretrial process or attempted to favor one party is simply not supported by the record. If anything, the trial transcript demonstrates that the bankruptcy court granted Mr. Matthews considerable latitude despite his repeated failure to comply with the court's procedural rules. *See* Trial Tr. 9-14.

Finally, Mr. Matthews contends that he is entitled to a new trial because the bankruptcy judge was biased against him. Although not cited by Mr. Matthews, the disqualification of a bankruptcy judge is governed by 28 U.S.C. § 455. *See* Federal Rule of Bankruptcy Procedure 5004(a). This statute provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. §455(a). The standard for disqualification is an objective one that considers whether "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's

---

[4] Although not made explicit in his brief, the Court deduces that Mr. Matthews objects to the bankruptcy court's addition of the phrase "a claim due and owing" in the Final Pretrial Order. The Court does not believe that this nominal alteration changed the issue for trial. If anything, the bankruptcy court's alteration simply replaced the parties disjointed and inaccurate statement with a more concise statement of the issue to be tried. Further, as previously explained, the bankruptcy court correctly focused on Mr. Gamboa's knowledge of the claim and did not impermissibly require Mr. Matthews to prove that the debt was mature.

impartiality." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002) (internal quotation and citation omitted).

The Court has reviewed the record, including the transcript and recording of the trial, and finds nothing to support Mr. Matthews' conclusory allegations of bias or inappropriate conduct. A party "is not entitled to a new judge every time he or she loses a contested matter or an adversary proceeding within the context of that bankruptcy proceeding." *In re Rafter Seven Ranches*, LP, No. 05-40483, 2009 WL 161317, at *2 (Bankr. D. Kan. Jan. 8, 2009). Mr. Matthews is no doubt disappointed that he lost at trial, but that does not mean the trial was unfair.

## CONCLUSION

For the reasons set forth above, the Court AFFIRMS the judgment of the bankruptcy court.

IT IS SO ORDERED this 21st day of September, 2021.

TIMOTHY D. DeGIUSTI
Chief United States District Judge